UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON

| | |
|---|---|
| MELISSA MOORE, | ) |
| | ) |
| Plaintiff, | )  NO. 5:22-CV-00148-MAS |
| | ) |
| v. | ) |
| | ) |
| KILOLO KIJAKAZI, | ) |
| *Acting Commissioner of Social Security*, | ) |
| | ) |
| Defendant. | ) |

**MEMORANDUM OPINION & ORDER**

Melissa Moore ("Moore") appeals the Commissioner's denial of her application for Supplemental Security Income ("SSI") benefits under Title XVI of the Social Security Act. The Court addresses the parties' competing summary judgment motions. [DE 14, 15]. For the reasons discussed below, the Court finds that the Administrative Law Judge ("ALJ") failed to follow applicable social security regulations and that remand for further proceedings is necessary.

**I.    FACTUAL AND PROCEDURAL BACKGROUND**

Moore filed an SSI application on July 1, 2019, alleging disability beginning December 1, 2017. [Administrative Transcript ("TR") at 158–67]. Moore alleges disability due to diabetes, neuropathy, and toe removal. [Tr. at 181]. Moore's claim was initially denied on September 25, 2019, and denied upon reconsideration on November 27, 2019. [Tr. at 61–70, 70–81]. ALJ Christopher C. Sheppard conducted

1

a hearing on February 12, 2021, non-attorney representative Patsy Hughes represented Moore at the hearing, and an impartial Vocational Expert ("VE") appeared and testified. ALJ Sheppard issued an unfavorable decision on February 24, 2021. [Tr. 12–25, 26–50].

Moore was 44 years old at the alleged onset date. She attended school through the 10th grade and was placed in a special education program in elementary school. [Tr. 37]. Moore has a negligible work history. She testified that, in the last 20 years, she was a stay-at-home mother while her children were young, and that the only work she performed outside the home was brief volunteer work at the Salvation Army. [Tr. 45–47]. Moore testified that she experiences constant numbness and pain in her extremities, most severely in her legs. [Tr. 38–39]. After having her little toe amputated due to her diabetes complications, Moore testified that she has noticed effects to her balance. [Tr. 40–41].

During the hearing, Moore's representative requested that ALJ Sheppard send Moore for an evaluation to develop the record regarding Moore's psychological health and intellectual disability. [Tr. 35]. ALJ Sheppard noted the request and stated that he would consider it as he considered the hearing testimony. [Tr. 35–36]. Ultimately, ALJ Sheppard did not find that such an evaluation was necessary, stating:

> Claimant requested to have a psychological consultative examination to address mental health and potential low IQ. However, the undersigned after speaking with claimant at her hearing denies this request. Claimant admitted she dropped out of school after 10th grade for no particular reason. She stated that she could read and write. She noted having special education classes in elementary school but not afterwards. She denied any prior mental health treatment. The record contains no references to low IQ or any other mental impairment.

[Tr. 19 n.1].

Ultimately, ALJ Sheppard determined that Moore has several severe impairments: diabetes mellitus with neuropathy; osteomyelitis status post right 5th digit amputation of right foot; obesity; unspecified atherosclerosis; hypertension; cellulitis; and hyperlipidemia. [Tr. 17]. However, he determined that Moore did not have an impairment or combination of impairments medically equal to the impairments enumerated under 20 C.F.R. 416.920(d), 416.925, and 416.926. [Tr. 17]. Considering Moore's impairments and the record, ALJ Sheppard determined that Moore has a residual functional capacity ("RFC") that would allow her to perform sedentary work.

Moore argues that the ALJ failed to develop the record by denying her request for a psychological evaluation because such an evaluation was necessary to properly develop the record. Additionally, Moore asserts that the ALJ did not properly evaluate her subjective statements regarding her symptoms. By doing so, Moore argues that the ALJ failed to follow social security regulations and therefore committed harmful error. [DE 14].

## II.    LEGAL FRAMEWORK

Judicial review of the ALJ's decision is deferential and strictly limited. The Court's sole task is to determine whether the ALJ applied the correct legal standards and whether the ALJ's factual findings are supported by substantial evidence in the record. *See Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 405 (6th Cir. 2009); *Jordan v. Comm'r of Soc. Sec.*, 548 F.3d 417, 422 (6th Cir. 2008); *see also* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any

3

fact, if supported by substantial evidence, shall be conclusive[.]"). Substantial evidence is "more than a scintilla of evidence, but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994). "The substantial-evidence standard allows considerable latitude to administrative decision makers" and "presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference by the courts." *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (quoting *Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984)).

The Court must make its substantial evidence determination based on the record as a whole. *Cutlip*, 25 F.3d at 286. However, the Court need not comb the entire record in search for facts supporting under-developed arguments. [*See* General Order No. 13-7 (citing *Hollon ex rel. Hollon v. Comm'r of Soc. Sec.*, 447 F.3d 477, 491 (6th Cir. 2006)) ("The parties shall provide the Court with specific page citations to the administrative record to support their arguments. The Court will not undertake an open-ended review of the entirety of the administrative record to find support for the parties' arguments.")]. Further, the Court may not "try the case *de novo*, resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007). The Court must affirm the ALJ's decision if there is substantial evidence in the record to support it, even if substantial evidence might also support the opposite conclusion. *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 393 (6th Cir. 2004); *Mullen*, 800 F.2d at 545. Likewise, the Court must affirm any

4

ALJ decision supported by substantial evidence, even if the Court itself might have reached a different original result. *See Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005); *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389–90 (6th Cir. 1999).

For context, the Court briefly outlines the ALJ's five-step sequential analysis. *See Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994); 20 C.F.R. § 416.920(a)(4). In the first step, the ALJ decides whether the claimant is performing substantial gainful activity. 20 C.F.R. § 416.920(a)(4)(i). In the second step, the ALJ determines whether the claimant suffers from any severe impairments. *Id.* at § 416.920(a)(4)(ii). In the third step, the ALJ decides whether such impairments, either individually or collectively, meet an entry in the Listing of Impairments. *Id.* at § 416.920(a)(4)(iii). In the fourth step, the ALJ determines the claimant's RFC and assesses whether the claimant can perform past relevant work. *Id.* at § 416.920(a)(4)(iv). Finally, in the fifth step, the burden shifts to the Commissioner. The ALJ must consider and decide whether there are jobs that exist in significant numbers in the national economy that the claimant could perform based on RFC, age, education, and work experience. *Id.* at § 416.920(a)(4)(v). If the ALJ determines at any step that the claimant is not disabled, the analysis ends there. *Id.* at § 416.920(a)(4).

### III. ANALYSIS

Moore contends that ALJ Sheppard failed to follow social security regulations in two ways: first, by failing to develop the record as to her mental limitations or incorporate such limitations into his RFC analysis; and second, by rejecting her

subjective statements related to leg pain, numbness, and need to elevate her legs, and the evidence in the record that supports those subjective statements. [DE 14-1, PageID# 423–28]. Moore further contends that the ALJ's failure to follow social security regulations was harmful error and that this Court should vacate the ALJ's decision and remand her case for further administrative proceedings. [DE 14-1, PageID# 428–29]. The Court shall address both of her arguments in turn.

A. THE ALJ ERRED BY FAILING TO FULLY DEVELOP THE RECORD RELATED TO MOORE'S MENTAL AND/OR INTELLECTUAL ABILITIES.

First, Moore contends that ALJ Sheppard erred by not developing the record as to her purported mental or intellectual impairments. ALJ Sheppard's RFC analysis did not mention Moore's mental capacity, intellectual ability, or any other mental limitations.[1] Rather, he addressed Moore's non-attorney representative's request for a psychological evaluation in a footnote. *See* [Tr. 19 n.1]. In the footnote, ALJ Sheppard noted that the record did not reference Moore's low IQ or any other mental impairment; she dropped out of school "for no particular reason"; she could read and write; and that she was enrolled in special education classes in elementary school but not afterwards. [Tr. 19 n.1]. He also specifically mentioned that "[t]he record contains no references to low IQ or any other mental impairment." [Tr. 19 n.1].

---

[1] ALJ Sheppard determined that Moore has the RFC to perform less than the full range of sedentary work; she can lift and carry ten pounds occasionally; she can sit for approximately six hours and stand for about two hours in an eight hour day with normal breaks; she can occasionally push and pull with her bilateral extremities; she can occasionally climb ramps or stairs; she can never climb ropes or scaffolds; she can occasionally stoop, kneel, crouch, and crawl; she can frequently handle, finger, and feel; and she should avoid unprotected heights, moving mechanical parts, concentrated exposure to vibrations and temperature extremes. [Tr. 67].

6

In social security proceedings, "the ALJ has a 'duty to investigate the facts and develop the arguments both for and against granting benefits.'" *Wright-Hines v. Comm'r of Soc. Sec.*, 597 F.3d 392, 397 (6th Cir. 2010) (quoting *Sims v. Apfel*, 530 U.S. 103, 110–11, 120 S. Ct. 2080, 147 L. Ed. 2d 80 (2000)). *See also Hobbs v. Berryhill*, No. 3:17-CV-00095-DCP, 2019 U.S. Dist. LEXIS 49232, at *28 (E.D. Tenn. Mar. 25, 2019) (stating that an ALJ has a duty to develop the record where the evidence suggests the claimant has a mental impairment). Likewise, a claimant bears the burden of "providing a complete record, defined as evidence complete and detailed enough to enable the to make a disability determination[.]" *Landsaw v. Sec'y of Health & Hum. Servs.*, 803 F.2d 211, 214 (6th Cir. 1986) (citing 20 C.F.R. §§ 416.912, 416.913(d)). Ultimately, the ALJ maintains discretion "to determine how to resolve any evidentiary gaps in the record." *Reidenbach v. Comm'r of Soc. Sec.*, No. 5:21-cv-1880, 2022 U.S. Dist. LEXIS 137393, at *19 (N.D. Ohio Aug. 2, 2022) (citing *Ferguson v. Comm'r of Soc. Sec.*, 628 F.3d 269, 275 (6th Cir. 2010); 20 C.F.R. § 404.1520b(b)).

Relevant here, an ALJ's duty to develop the record is heightened "when an unrepresented claimant unfamiliar with hearing procedures appeals before him." *Lashley v. Sec'y of Health & Human Servs.*, 708 F.2d 1048, 1051 (6th Cir. 1983) (adopting standard in *McConnell v. Schweiker*, 655 F.2d 604 (5th Cir. 1981)). "To satisfy this special duty the administrative law judge must 'scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts.'" *Lashley*, 708 F.2d at 1052 (quoting *Gold v. Sec'y of Health, Education & Welfare*, 463 F.2d 38,

7

43 (2d Cir. 1972)). The fact that a claimant appears at a hearing without counsel is not alone cause for error. *See Duncan v. Sec'y of Health & Human Servs.*, 801 F.2d 847, 856 (6th Cir. 1986). Accordingly, there is no "bright line test" used to determine whether the ALJ has failed to fully develop the record; instead, reviewing courts must make such a determination on a case-by-case basis. *Lashley*, 708 F.2d at 1052.

Here, there is no indicia in the administrative record that Moore is mentally or intellectually impaired apart from the statements made during the hearing before ALJ Sheppard. Upon Moore's non-attorney representative raising the specter that Moore may have such an impairment, ALJ Sheppard acknowledged the statements—including the request for a psychological examination—and proceeded to take Moore's testimony. Ultimately, the ALJ did not order a psychological evaluation. [Tr. 19 n.1]. Thus, the record was only developed solely to the extent that ALJ Sheppard asked questions during the hearing.

ALJ Sheppard asked about Moore's special education background,[2] her ability to read and write, and why she dropped out of school in the 10th grade.[3] On all fronts,

---

[2] ALJ Sheppard's questions were limited as follows:
> Q: And I have here that you at least got to the 10th grade. Is that right?
> A: Do what again? I didn't hear you.
> Q: I said you got to the 10th grade?
> A: Yes.
> Q: All right. Were you in any type of special education?
> A: In elementary.
> Q: What kind of special, what kind of services did you receive in elementary school?
> A: Gosh, it's been so long I forgot. It was I think for my English and history.

[Tr. 37–38].

[3] Moore answered, "I just quit." [Tr. 43].

8

the ALJ's questioning as it relates to Moore's mental or intellectual capacity was not sufficient to fully develop the record. Regarding "inarticulate claimants or claimants with limited education," "[s]uperficial questioning . . . is likely to elicit responses which fail to portray accurately the extent of their limitation." *Lashley*, 708 F.2d at 1052. As ALJ Sheppard acknowledged, the record did not contain evidence of a mental or intellectual impairment. [Tr. 19 n.1]. He relied on Moore's brief answers to a short series of questions to determine that no psychological consultative examination was necessary to determine the existence or extent of such limitations.

Given that she was not represented by an attorney and the ALJ's heightened duty to develop the record, the Court finds that the ALJ committed error by failing to fully develop the record. Further, the error was not harmful because ALJ Sheppard's RFC analysis did not address any mental or intellectual limitation, or lack thereof. Thus, Moore was denied a full and fair hearing and remand is required to further develop the record as to her mental and/or intellectual limitations.[4]

**B.    THE ALJ IMPROPERLY EVALUATED MOORE'S SYMPTOMS.**

Second, Moore asserts that ALJ Sheppard did not adequately consider the intensity, persistence, and limiting effects of her symptoms, as required by 20 C.F.R.

---

[4] Finding remand appropriate in this instance is not tantamount to a finding that the ALJ erred by failing to order Moore undergo a psychological evaluation by a consultant expert. Rather, the Court recognizes that the ALJ maintains discretion to fully develop an "insufficient or inconsistent" record. 20 C.F.R. § 404.1520b(b); *see id.* at (b)(2)(i)–(iv) (providing methods for developing the record). *See also Cox v. Comm'r of Soc. Sec.*, 615 F. App'x 254, 263 (6th Cir. 2015) ("If the ALJ cannot reach a conclusion regarding a claimant's disability due to the insufficiency or inconsistency of the evidence, regulations provide that the Commissioner 'will try to resolve the inconsistency or insufficiency' by taking one or more specified actions, including ordering a consultative examination or recontacting the claimant's treating physician for additional evidence or clarification. . . . However, the regulations suggest that the record may be sufficient to reach a conclusion regarding the claimant's disability even in the absence of any medical opinion.").

§§ 404.1529 and 416.929. SSR 16-3p, 2016 SSR LEXIS 4 governs the evaluation of symptoms in Title II and Title XVI disability claims when determining whether a claimant can return to work. 82 Fed. Reg. at 49,462. A two-step inquiry guides an ALJ's evaluation of a claimant's symptoms. *Id.* at 49,463–64. First, he must determine whether an "underlying medically determinable physical or mental impairment . . . could reasonably be expected to produce an individual's symptoms, such as pain." *Id.* at 49,463. Second, he must examine the "intensity and persistence of those symptoms to determine the extent to which the symptoms limit an individual's ability to perform work-related activities." *Id.* During the second step, the ALJ must "consider all the evidence presented," 20 C.F.R. § 404.1529(a), including information about [the claimant's] prior work record, [her] statements about [her] other symptoms, evidence submitted by [her] medical sources, and observations by . . . other persons[.]" *Id.* at § 404.1529(c)(3). Generally, a reviewing court may only disturb these findings for a "compelling reason." *Sims v. Comm'r of Soc. Sec.*, 406 F. App'x 977, 981 (6th Cir. 2011).

The Court notes that the ALJ found that Moore's medically determinable impairments could reasonably be expected to cause her alleged symptoms. [Tr. 19]. Neither the Moore nor the Commissioner contests this finding, so the ALJ's finding at step-one of the inquiry is not at issue. However, at step two, ALJ Sheppard failed to highlight any substantive inconsistencies in the administrative record that would justify discounting Moore's subjective testimony regarding the pain and other

10

symptoms. The ALJ tracked Moore's treatment history as reflected in the record, as follows:

- In January 2019, Moore was compliant with her oral diabetic regimen.

- In August 2019, Moore visited the doctor, reported no physical complaints and that she "fel[t] fine."

- In May 2020, Moore reported that the numbness in her feet was getting worse, but her A1C was "at goal."

- In December 2020, she complained that her lower extremities hurt due to neuropathy.

- Moore underwent a 5th digit amputation of the right foot.

- Moore continued to suffer from osteomyelitis and cellulitis of the right foot, but her treatment since the amputation has otherwise been "routine."

- She has a Body Mass Index ("BMI") of 49.6, placing her in the "extreme" obese category for adults.

- Moore's obesity significantly exacerbated her other severe impairments.

- Moore has high blood pressure but is compliant with her blood pressure medication and her blood pressure is at goal.

- Moore has hyperlipidemia, but records show it's reasonably controlled with medication.

[Tr. 19–20]. ALJ Sheppard also went on to opine that an unsigned treating physician opinion from Lexington Foot and Ankle Center was not persuasive because its finding that Moore is permanently disabled is an administrative finding reserved for the Commissioner. Finally, ALJ Sheppard opined that the state agency examiners who found Moore capable of medium exertion were likewise unpersuasive because he found that they overstated Moore's abilities considering her impairments.

Under social security regulations, "negative findings or inconsistencies" of a claimant's subjective symptoms are some "of the many factors" that must be considered when assessing the intensity, persistence, and limiting effects of an individual's symptoms. 82 Fed. Reg. 49,464.

In this case, the Court can only discern two purported inconsistencies identified by the ALJ. First, in May 2020, Moore's A1C was "at goal" but she reported the numbness in her feet getting worse. [Tr. 19]. Second, following her toe amputation, Moore's medical records reflected that she still suffered from osteomyelitis and cellulitis of the right food but that her treatment was otherwise routine. [Tr. 19]. The ALJ's decision fails to fully articulate how he found Moore's statements to be inconsistent with other evidence in the record—which is necessary to make clear to "any subsequent reviewer . . . how the adjudicator evaluated the individual's symptoms." 82 Fed. Reg. 49,464.

The Court will not uphold that decision when the Commissioner failed to apply proper legal standards unless the legal error was harmless. *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2006). Here, the deficiencies at step two of the ALJ's analysis are not harmless error. The ALJ's finding that Moore's subjective statements were inconsistent with other evidence in the record informed the ALJ's RFC determination. Had Moore's statements given greater weight, the ALJ's analysis would have been altered because Moore testified that she must elevate her leg due to swelling. [Tr. 52]. Critically, when asked by the ALJ to assume that the individual would need to elevate their legs throughout the day 2 to 3 times for 15 to

12

20 minutes at time on a consistent, sustained basis, the VE testified that such a restriction would exceed employers' tolerance. [Tr. 58].

For these reasons, remand is appropriate so that the ALJ can clearly articulate his reasoning for determining that Moore's statements were inconsistent with other evidence in the record, including the objective medical evidence relating to Moore's diabetes, neuropathy, and toe removal.

## IV.    CONCLUSION

For the reasons stated herein, **IT IS ORDERED** that:

1. The above-styled action is **REMANDED** to the Commissioner for further proceedings so the ALJ may, in compliance with all applicable social security regulations:

   a. Fully develop the record as it relates to Moore's purported mental and or intellectual impairment(s);

   b. Fully articulate the reasoning for determining that Moore's subjective statements regarding diabetes, neuropathy, and toe removal symptoms are not consistent with other evidence in the record.

2. Defendant's Motion for Summary Judgment [DE 16] is **DENIED** without prejudice; and

3. Plaintiff's Motion for Summary Judgment [DE 14] is **GRANTED** insofar as the matter is remanded for further proceedings.

Entered this 3rd of August, 2023.

MATTHEW A. STINNETT
UNITED STATES MAGISTRATE JUDGE
EASTERN DISTRICT OF KENTUCKY